UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA LEAL FAJARDO,[1]<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, ET AL.,<br><br>Respondents. | Case No. 1:25-CV-01386 JLT SKO<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Docs. 1, 9) |

## I. INTRODUCTION

Before the Court for decision is Ms. Leal Fajardo's request for a temporary restraining order (Doc. 9) filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging her ongoing immigration detention. (Doc. 1.) Having evaluated the TRO request, Respondents' statement (Doc. 13) and opposition (Doc. 15), and Petitioner's statement (Doc. 13) the Court **DENIES** the motion for temporary restraining order and **DENIES** the petition for writ of habeas corpus on the merits.

## II. FACTUAL & PROCEDURAL BACKGROUND

Petitioner, an attorney, is a citizen and national of Columbia who crossed the border into

---

[1] Respondents object to Petitioner proceeding by pseudonym (*see* Doc. 3), arguing that the procedure is not justified under the circumstances, particularly given Petitioner's "public criminal case proceedings." (Doc. 9 at 2, n. 2.)[1] Respondents also object to Petitioner naming multiple officials as Respondents in this matter. Due to the outcome here, and in the interest of expedience, the Court declines to expend time considering this question and finds this motion to be **MOOT**.

1 the United States on May 21, 2022. (Doc. 1 at 2) Three days later, an immigration officer
2 determined that Petitioner did not have a valid immigrant visa or other valid entry document but
3 that she "entered the United States illegally near Del Rio, Texas on 05/21/2022 with the intention
4 of seeking employment and residence permanently in the United States." (Doc. 15-1 at 10) This
5 was determined through a "brief interview" with Petitioner in which she admitted that the
6 "entered the U.S. by crossing the Rio Grande River near Del Rio, Texas" and that she "was not
7 inspected or admitted by an Immigration Officer." *Id*. at 7. Thus, the officer determined Petitioner
8 was inadmissible and subject to removal. (Doc. 1-1 at 2; Doc. 15-1 at 10) He placed her in
9 expedited removal status and ordered her removal[2]. *Id.* At the time, she indicated she feared
10 returning to Columbia. Consequently, the officer referred her for a "credible fear interview" and
11 was given a form explaining the process. (Doc. 1-1 at 22) She was "processed as an Expedited
12 Removal and [was] remanded to the custody of ICE/ERO." *Id*. at 8.

13      At the same time on May 24, 2022, ICE provided Petitioner a "Notice to Alien Ordered
14 Removed/Departure Verification." (Doc. 15-1 at 17) This notice informed Petitioner that she has
15 "been found to be inadmissible to the United States." *Id*.

16      On June 4, 2022, ICE released her on humanitarian parole according to 8 U.S.C. § 1182
17 (d)(5)(A)/ INA § 212(d)(5(A). (Doc. 15-1 at 13) The notice informed her, "You have been
18 released from service custody pending a final decision in your exclusion/deportation hearing." *Id*.
19 at 14. ICE later extended her parole extended her parole through October 2025. *Id*. at 15. About
20 two-and-a-half years after entering the country, Petitioner filed an Application for Asylum and
21 Withholding of Removal.[3] (Doc. 9-4 at 4) Since at least July 2024, Petitioner has been
22 represented by counsel. (Doc. 9-4 at 4)

23      When Petitioner entered the country, she had an American boyfriend whom she had met

---

[2] In connection with her petition, Petitioner provided an *unsigned* copy of an Order of Removal (Doc. 1-1 at 2) and asserted there was no evidence that ICE issued an order of removal (Doc. 1 at 3). In their papers, the government provides a copy of the *signed* Order of Removal (Doc. 15-1 at 10). Petitioner seems to concede that this order of removal is effective and cannot be challenged in this proceeding. (Doc. 14 at 16 ["[S]he cannot challenge her expedited removal order or the related decision of the Immigration Judge to affirm a negative credible fear determination in her case, except through 8 U.S.C. § 1252(e)(2)."])

[3] In general, such a petition is required to be filed within one year of entering the country. 8 U.S.C. § 1158(a)(2)(B).

1   on a dating app six months before entering the United States. (Doc. 9-4 at 3) In July 2022, she

2   moved to South Lake Tahoe, California to live with her boyfriend. *Id*. In November 2022,

3   Petitioner began to work three jobs and paid taxes on her earnings. *Id*. She reported as required to

4   the ICE office in Sacramento. *Id*.

5         In November 2023, her relationship with her boyfriend ended, and she moved to San Jose,

6   California, where she met a new boyfriend later in 2023. (Doc. 9-4 at 3-4) The couple moved in

7   together in March 2024 and lived in Sunnyvale, California, were she worked three jobs. *Id*. at 4-5.

8   In July 2025, Petitioner and her boyfriend became engaged to be married, and they moved to

9   Mountain View, California. *Id* at 6.

10         On September 11, 2025, Petitioner received a letter instructing her to report on September

11   24, 2025, for her credible fear interview, at which ICE would determine whether Petitioner had a

12   credible fear of persecution if returned to her native country. *Id*. at 12. Petitioner appeared for her

13   interview, with her attorney appearing by telephone, and it lasted for three hours and ten minutes.

14   (Doc. 9-4 at 8; Doc. 15-1 at 20; Doc. 101 at 16-41.) The asylum officer determined,

> **There is not a significant possibility that the applicant can establish eligibility for asylum, statutory withholding of removal, or protection under CAT.**
>
> Persecution Written Analysis
>
> The applicant did not report the threat before the authorities; thus, precluding them with an opportunity to afford her with protection. Although the applicant stated she did not report the threat before the authorities because of corruption, she did not provide persuasive testimony or evidence that authorities in Colombia are unable or unwilling to control FARC dissidents, if the actors were FARC dissidents. Moreover, country reports show that the government attempts to control FARC dissidents. See, https://www.aljazeera.com/news/2025/9/16/landmark-ruling-convicts-seven-farc-ex-leaders-of-wartime.
>
> Considering the above, the record does not demonstrate that FARC dissidents are capable of harming the applicant and that the government would be unwilling or unable to afford her with protection.
>
> The evidence also shows the applicant was threatened once in person and telephonically on additional occasions. Without evidence that FARC dissidents attempted to locate the applicant, there is no evidence that at present, almost after three years, they are inclined to harm the applicant. Moreover, the fact that the applicant was only threatened at the farm is evidence that she lived without experiencing harm in her residence and as such, could internally relocate.
>
> Torture Written Analysis
> CAT Infliction: The applicant and the evidence of record does not show that the

>applicant was harmed or fears public officials.
>
>Consent and acquiescence: The applicant indicated that she would not be afforded with protection from the government of Colombia from FARC dissidents. Although the applicant indicated to have heard from peers of corruption between police and people involve in criminal activities, this does not constitute persuasive testimony or evidence to establish consent or acquiescence. Considering this with the above country reports, the applicant did not establish that the government will consent or acquiesce to any harm from FARC dissidents.

(Doc. 1-1 at 35-36.) Thus, the officer concluded that though Petitioner was credible, she had not established a credible fear of persecution or torture if returned to Columbia. *Id*.

Petitioner was arrested and placed in detention, to complete her removal from the country. *Id*. Petitioner sought review of the decision by an Immigration Judge, and the matter was referred to an IJ to do so. *Id*. at 24, 26-28. On October 1, 2025, the IJ held the hearing to review the negative credible fear determination. *Id*. at 30-33. The IJ affirmed the negative determination and "returned [the matter] to DHS for removal" of Petitioner from the country. *Id*. at 33. The order reads, "This is a final order. There is no appeal from this decision." *Id*. Even still, on October 8, 2025, Petitioner sought review of the negative fear determination, and on October 15, 2025, DHS denied the request for reconsideration. (Doc. 15-1 at 3)

On October 17, 2025, Petitioner filed a petition for writ of habeas corpus (Doc. 1). In her petition, she takes the position that her parole status was revoked improperly in violation of the Fifth Amendment's Due Process Clause. *Id.* at 4. She argues that she cannot be placed in expedited removal now because she has been in the country for more than two years and argues, implicitly that she was not placed in expedited removal at the outset of her case because not order of expedited removal issued. *Id*. at 44. On October 26, 2025, Petitioner filed a motion for temporary restraining order seeking her immediate release from detention. (Doc. 9) She asserts that she is not in expedited removal, for the reasons discussed above. *Id*. In addition, she asserted that she believed that ICE intended to remove her from the country the next day.

The Court entered a minute order setting a briefing and hearing schedule. (Doc. 11.) The Court required the parties to "detail Petitioner's current immigration status, including whether Petitioner is subject to a final order of removal, and any anticipated timeline for planned removal" and to file briefs related to the Court's authority to award the requested relief. (*Id*.) The Court

also precluded Respondents from removing Petitioner from the Eastern District of California. (*Id.*)

### III.  LEGAL AUTHORITIES

**A.   Jurisdiction**

  1.   Habeas Corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Ms. Leal Fajardo seeks his immediate release from custody, which she contends violates the Constitution of the United States. (*See* Doc. 1.) Thus, she properly invokes the Court's habeas jurisdiction.

  2.   Judicial Review under the INA

The INA limits judicial review in many instances. Immigration law provides two main processes for removing noncitizens deemed ineligible to enter or remain in the United States. The first, commonly referred to as "Section 240" or "Section 1229a" proceedings, is the standard mechanism for removing inadmissible noncitizens. See generally 8 U.S.C. § 1299a. "Section 240 removal proceedings take place before an [Immigration Judge (IJ)], an employee of the Department of Justice (DOJ) who must be a licensed attorney and has a duty to develop the record in cases before them." *Coalition For Humane Immigrant Rights, v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) (citing 8 U.S.C. § 1229a(a)(1), (b)(1)

Alternatively, an immigrant may be placed in "expedited removal" status for reasons, including that the person entered the United States without a valid visa or other valid entry documents. *See generally* 8 U.S.C. § 1225. In expedited removal, the process is overseen by an immigration officer, rather than an IJ. 8 C.F.R. § 235.3(b)(2)(i). The officer asks the immigrant questions about their "identity, alienage, and inadmissibility," and whether they intend to apply for asylum, fear persecution or torture, or fear returning to their country of origin.

§ 235.3(b)(2)(i), (b)(4). Noncitizens are not entitled to counsel during this questioning, and no recording or transcript is made. 8 C.F.R. § 235.3(b)(2)(i). For an immigrant to be placed in expedited removal, the immigrant must be "arriving in the United States," and may not have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii).[4] An arriving alien

> means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. **An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked**.

8 C.F.R. § 1.2, emphasis added.

Under the expedited removal process, if the immigrant claims asylum of fear of persecution or torture, or a fear of returning to his or her country, "the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with 8 CFR 208.30." § 253(b)(4). Once the referral happens, the referring officer must provide the immigrant with a written disclosure (Form M-444), which describes the credible fear interview, including,

> (A) The purpose of the referral and description of the credible fear interview process;
> (B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;
> (C) The right to request a review by an immigration judge of the asylum officer'' credible fear determination; and
> (D) The consequences of failure to establish a credible fear of persecution or torture.

§ 253(b)(4)(i). The asylum officer then must interview the immigrant and determine if the immigrant expressed a credible fear of persecution or torture. Whatever the officer's determination, it must be reviewed by the supervisory asylum officer before it becomes effective. § 208.30(3)(8). If there is a finding of credible fear, the case is converted to a § 240 proceeding and set before an IJ. If the asylum officer and the supervisor determine that the immigrant has not

---

[4] There are other exclusions that do not apply here. 8 U.S.C. § 1225(b)(1)(F).

demonstrated a credible fear of persecution or torture, the immigrant may request review by an IJ. § 208.30(g). If the IJ upholds the determination and the immigrant files a habeas petition, the Court's authority is limited to determining[5] whether the petitioner is an alien, whether the petitioner was ordered removed under the expedited removal provision, and whether the petitioner can prove that she was lawfully admitted or granted asylum. 8 U.S.C. § 1252(e)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

**B.    Analysis**

Petitioner's motion for temporary restraining order and her underlying petition rest on her assertion that she cannot be placed in expedited removal status at this time because she was placed on parole soon after she entered the country. (*See* Doc. 1; Doc. 9) The flaw in her argument is that DHS does not seek to place her in expedited removal status now; rather, she was placed in expedited removal status at the time she entered the country and was ordered to be removed from the country. (Doc. 1-1 at 2, 22; Doc. 15-1 at 10, 17) The delay in her removal was due to her claim of fear of returning to Columbia. (Doc. 15-1 at 17) At no time before her arrest in September 2025, has she challenged her placement in that status.

Moreover, there is no dispute that when she was placed in expedited removal, she was an arriving alien. She had been apprehended just days before after having crossed the Rio Grande River near Del Rio, Texas. (Doc. 15-1 at 7, 10) She admitted to being a national and citizen of Columbia without any valid entry documents. *Id*. She was determined to be inadmissible at that time and she admits that she traveled from Columbia through Mexico before entering the United States on May 21, 2022. Thus, she had not been physically present in the United States for two years before she was placed in expedited removal.

The question she seems to present is whether her placement on parole on June 4, 2022 converts her expedited removal status to § 240 status. The Court concludes it does not. First,

---

[5] The petitioner may also make a challenge to the validity of the system under 8 U.S.C. § 1252(e)(3), but this has not occurred here.

upon being paroled, she was notified that it was pursuant to INA § 212(d)(5), which preserves her "arriving alien" status even though paroled. 8 C.F.R. § 1.2.

Second, at issue in the authorities cited by Petitioner were people who had not been placed in expedited removal at that time of their arrival in the United States. For example, *Make the Road New York v. Noem*, ---F. Supp. 3d ---, 2025 WL 2494908, at *1 (D.D.C. Aug. 29, 2025), concerned DHS's recent policy of placing nonimmigrants in expedited removal status sometimes years after their entry into the United States after having been released on parole. The plaintiff represented noncitizens who were not placed in expedited removal before their release on parole. *Id.* at 6. The court describes the order as, "another case related to the Government's recent expansion of expedited removal . . ." *Id*. *Make the Road* takes no exception to the expedited removal process employed as to those newly entering the country. That court noted, "For nearly three decades, the federal government has subjected noncitizens apprehended at the border to fast-paced summary removal. Using that procedure, these people are quickly turned back across the border, typically after a single conversation with an immigration officer. This process, known as expedited removal, has long been applied to noncitizens "who are apprehended immediately proximate to the land border and [who] have negligible ties or equities in the [United States]." Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004)." *Id*. at 1. Likewise, in *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *1 (E.D. Cal. Sept. 18, 2025), DHS was attempting to place the plaintiffs into expedited removal despite that each had been placed in § 240 proceedings and released on parole months or years before. *See also Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025).

Third, there is some facial appeal to Petitioner's claim that her detention should have been preceded by notice and an opportunity to contest the revocation of her parole. However, in her unique circumstances, the Court does not find pre-deprivation notice was required. Petitioner was given a credible fear interview *before* she was detained. At that hearing, the officer rendered a negative determination for the reasons set forth above. Petitioner admits she had advance notice of the hearing, was able to consult with a paralegal at her lawyer's office in advance, that the

hearing lasted for three hours and ten minutes, and that she was represented by counsel at the hearing. She sought review of the negative fear determination by an IJ, who affirmed the officer's determination and ordered her removal. Her request for reconsideration also failed.

As Petitioner acknowledges, this Court lacks the authority to second-guess these determinations. *Mendoza-Linares v. Garland,* 51 F.4th 1153-1156 (9th Cir. 2022). Even if the Court agreed that her expedited removal status and order of removal should not require her detention, in light of the subsequent events that have rendered that removal order final, including the negative credible fear determination and her appeals of that order, release would serve no purpose. To the contrary, DHS is allowed to detain an immigrant for the purpose of effecting the person's removal. Indeed, the purposes of Petitioner's parole appear to have been served. 8 U.S.C. § 1182(d)(5)(A).

The Court will stay the order precluding Petitioner's removal from the United States for a period of time to allow Petitioner to seek any available appellate remedies. Upon the expiration of that period, and absent further order of this Court, the Court's prior injunction will dissolve.

**ORDER**

For these reasons, the Court **ORDERS**:

1. The motion for the temporary restraining order (Doc. 9) is **DENIED**.
2. The petition for writ of habeas corpus is **DENIED**.
3. The minute order issued on October 27, 2025, precluding Petitioner's removal from this District and the country is **WITHDRAWN**. However, **this withdrawal order is STAYED until November 14, 2025**, to allow Petitioner to seek whatever appellate remedies are available to her, if she chooses.

IT IS SO ORDERED.

Dated:   **November 8, 2025**

UNITED STATES DISTRICT JUDGE